**UNITED STATES BANKRUPTCY COURT**
**WESTERN DISTRICT OF VIRGINIA**
**LYNCHBURG DIVISION**

| | | |
|---|---|---|
| In re: LISA M. KIRKLAND, | ) | Case No. 01-00627-LYN |
| | ) | |
| Debtors. | ) | |
| | ) | |
| LISA M. KIRKLAND | ) | Adv. No. 07-06057 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| SALLIE MAE and EDUCATIONAL | ) | |
| CREDIT MANAGEMENT | ) | |
| CORPORATION, | ) | |
| | ) | |
| Defendant, | ) | |
| | ) | |

**MEMORANDUM**

This matter comes before the Court on a motion by defendant Educational Credit Management Corporation ("ECMC") to alter or amend the judgment of this Court entered on docket on May 2, 2008. Defendant Sallie Mae is not listed as a party to the motion to alter or amend.

The complaint filed by the Plaintiff sought a determination that certain debts arising from student loans had been paid in full, except for interest that accrued during the pendency of the case. The judgment fixed the amount owed by the Plaintiff at $4,737.27 in principal and $184.40 in

1

interest. In the judgment, the Court affirmatively declined to award attorneys fees.

The motion to alter or amend the judgment will be denied.

### *Jurisdiction*

This Court has jurisdiction over this matter. 28 U.S.C. § 1334(a) & 157(a). This proceeding is a core proceeding. 28 U.S.C. § 157(b)(2)(A). Consequently, this Court may enter a final order. This memorandum shall constitute the Court's findings of fact and conclusions of law as required by Fed. R. Civ. P. 52, which is made applicable in this proceeding by Fed. R. Bankr. P. 7052.

### *Facts*

*The Student Loans.* Between 1989 and 1995, the Debtor borrowed money on eight different occasions to pay college tuition. Each occurrence constituted a separate loan. Sallie Mae was the "lender" on each of the eight loans.[1] Three different entities, ECMC, United Student Aid Funds, Inc. ("USAF"), and the New Jersey Higher Education Assistance Authority ("NJHEAA") guaranteed the loans. These three entities are referred to collectively herein as "the Sallie Mae Guarantors" or "the Sallie Mae Affiliates". The Debtor made payments toward the loans for a period of years.

*Sallie Mae's Proofs of Claim.* On February 23, 2001, the Debtor filed a petition initiating the above-styled chapter 13 bankruptcy case. Sallie Mae filed five proofs of claim, two of which were disallowed because they were duplicative or late-filed or both.[2] The allowed claims were claim no. 6 in the amount of $8,126.72, claim no. 7 in the amount of $2,680.59 and claim no. 9

---

[1] Defendants post-trial Brief, [p.2].

[2] Claim no. 12 was disallowed by an order of this Court entered on Docket as Docket no. 45 on October 30, 2002. Claim no. 15 was disallowed by an order of this Court entered on Docket as Docket no. 56 on December 16, 2005.

in the amount of $4,737.27.  None of the proofs of claim provided the name of the guarantors.  On May 25, 2001, Sallie Mae filed an assignment of claim no. 6 with the Clerk of the Court assigning the claim to USAF.  Neither Sallie Mae nor any other entity ever filed an assignment of claim for either claim no. 7 or claim no. 9.

*The Debtor's Chapter 13 Plan.*   The Debtor's chapter 13 plan provided for payments totaling $32,402.00 to unsecured creditors including $28,048.00 to "Class B" unsecured creditors.  Neither Class A nor Class B is defined in the plan.  Neither Sallie Mae nor any of the Sallie Mae Guarantors is mentioned in the plan by name.  The plan provided for the payment of $700.00 per month for 60 months.   The plan further provided that the unsecured creditors were to receive 100% of their claims.  The Debtor intended to pay the claims of Sallie Mae (and/or its assignees) in full during the pendency of the chapter 13 case, with the exception of interest that would accrue during that time.

*Performance under the Chapter 13 Plan.*  During the pendency of the case, the Debtor made payments totaling $38,500.00, the equivalent of 55 payments of $700.00 each.[3]  This constitutes five payments less than provided for by the plan.  This is in part because the Chapter 13 Trustee's Final Report lists the three Sallie Mae claims in amounts that are less than the amounts of the proofs of claims filed by Sallie Mae. The report lists claim no. 6 as allowed in the amount of $7,605.72, claim no. 7 as allowed in the amount of $2,277.59, and claim no. 9 as allowed in the amount of $3,536.68.[4]

---

[3]    This conclusion is reached by dividing the monthly payment amount under the plan, $700.00, into the total amount paid to claimants plus the trustee's allowance, $38,500.00 (=$35,436.61 + $3,063.39).

[4]    There is no indication in the record why the Trustee's final report indicates that claims 6, 7, and 9 were allowed and paid in amounts that were less than the amounts of each on the three proofs of claim.  There were no objections filed to these three proofs of claims and no order issued reducing the allowed amount of any of these

3

After the Debtor had made the 55 payments of $700.00 each, the chapter 13 trustee refunded $4,049.21to the Debtor and filed the Final Report indicating that all unsecured claims had been paid in full.

The trustee filed the final report, the order of discharge was entered on docket, and on February 27, 2006, the case was closed in the normal course.

*Post-Closing Facts.* After the Debtor's bankruptcy case was closed, Sallie Mae began dunning the Debtor in the approximate amount of $5,000.00. Counsel for the Debtor requested documentation from Sallie Mae. Sallie Mae did not reply. On December 5, 2006, counsel for the Debtor sent a second request to Sallie Mae requesting it to send to the debtor copies of the original loan agreement and the transactional history of the servicing of the loan from its inception.[5] Sallie Mae responded by sending the copies of the original loan agreement and two pages each of which was entitled "Declining Balance Payment History".[6] The first such page ("Payment History One") indicates that the Debtor owed Sallie Mae $4,854.54 as of October 18, 2000. The last entry on Payment History One indicates that the Debtor owed Sallie Mae $00.00 on May 17, 2001. The second such page ("Payment History Two") indicates that on May 22, 2006, the Debtor owed Sallie Mae $5,855.92. There is no documentation in this response indicating what transactions transpired between October 18, 2000, and May 22, 2006, that caused the debt to increase from $0.00 to $5,855.92. Sallie Mae did not provide the Debtor with any other documentation.

---

proofs of claim.

[5]  See Joint Exhibit 4.

[6]  See Joint Exhibit 4.

On June 25, 2007, the Plaintiff filed a complaint initiating this adversary proceeding to determine the amount owed. Sallie Mae and ECMC asserted that the Debtor owed a total of $8,135.19, including $184.40 in interest and $1,539.68 in costs. The Debtor asserted that the debt had been paid in full, except for interest that accrued during the pendency of the case.

At the conclusion of the hearing on this matter, the court asked counsel for the Defendants to provide "a detailed account [of] how everything took place from the start to the finish; when they were paid; who paid them; and what [actually occurred]". Both Sallie Mae and ECMC declined to do so.

In calculating the amount owed to ECMC, the Court determined: (1) the amount of Sallie Mae's claim no. 9 on the date of petition; (2) the amount of that claim that was paid through the plan and the amount that remained due under student loan promissory notes at the end of the plan payments; (3) the amount and effect of any refund made to the Debtor indirectly through the Chapter 13 trustee by Sallie Mae and the Sallie Mae Affiliates; and (4) whether the Debtor owes any costs or interest to Sallie Mae.[7]

At the outset of the of the bankruptcy case, Sallie Mae filed three allowed proofs of claim, nos. 6, 7, and 9, totaling $15,544.58. The Trustee's Final Report indicates that a total of $13,369.99 was paid to Sallie Mae and the Sallie Mae affiliates during the pendency of the chapter 13 plan. During the pendency of the plan, or shortly thereafter one or more of the Sallie Mae's affiliates returned a total of $2,562.68 to the trustee who in turn refunded it to the Debtor, an amount this Court deemed to be still owing to Sallie Mae and/or ECMC. The Court concluded that the total amount of principal owed by the Debtor to Sallie Mae was the sum of

---

[7] The reasoning summarized herein is discussed in more detail in the Memorandum of this Court filed on May 2, 2008.

5

the amount of the payment shortfall and the amount of the refund, or $4,737.27 ( = $2,174.59 + $2,562.68).

The Court set the award of interest at $184.40, the amount that appeared as interest on Exhibit 5.  The Court awarded no costs to Sallie Mae and/or ECMC no statutory or factual basis for the accrual of costs was provided.

The Court filed a judgment declaring the debtor owed a debt to Sallie Mae and/or ECMC in the amount of $4,737.27 in principle and $184.40 in interest.  ECMC filed a motion to alter or amend that judgment.

### *Discussion.*

The motion is brought under Fed. R. Bankr. P. 9023 and 9024.  Rule 9023 makes Fed. R.Civ. P. 59[8] applicable in contested matters in bankruptcy.  Rule 9024 makes Fed. R. Civ. P.

---

[8]     Fed. R. Civ. P. 59 provides:

(a) In General.
    (1) Grounds for New Trial. The court may, on motion, grant a new trial on all or some of the issues--and to any party--as follows:
        (A) after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court; or
        (B) after a nonjury trial, for any reason for which a rehearing has heretofore been granted in a suit in equity in federal court.
    (2) Further Action After a Nonjury Trial. After a nonjury trial, the court may, on motion for a new trial, open the judgment if one has been entered, take additional testimony, amend findings of fact and conclusions of law or make new ones, and direct the entry of a new judgment.
(b) Time to File a Motion for a New Trial. A motion for a new trial must be filed no later than 10 days after the entry of judgment.
(c) Time to Serve Affidavits. When a motion for a new trial is based on affidavits, they must be filed with the motion. The opposing party has 10 days after being served to file opposing affidavits; but that period may be extended for up to 20 days, either by the court for good cause or by the parties' stipulation. The court may permit reply affidavits.
(d) New Trial on the Court's Initiative or for Reasons Not in the Motion. No later than 10 days after the entry of judgment, the court, on its own, may order a new trial for any reason that would justify granting one on a party's motion. After giving the parties notice and an opportunity to be heard, the court may grant a timely motion for a new trial for a reason not stated in the motion. In either event, the court must specify the reasons in its order.
(e) Motion to Alter or Amend a Judgment. A motion to alter or amend a judgment must be filed no later than 10 days after the entry of the judgment.

60[9] applicable in contested matters in bankruptcy.

Rule 60 provides in relevant part that relief from a judgment may be granted on grounds of (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party; (4) the judgment is void; (5) the judgment has been satisfied, released or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or (6) any other reason that justifies relief.

The Defendant does not distinguish between or discuss either of these rules in any

---

[9] Rule 60 provides:
(a) Corrections Based on Clerical Mistakes; Oversights and Omissions. The court may correct a clerical mistake or a mistake arising from oversight or omission whenever one is found in a judgment, order, or other part of the record. The court may do so on motion or on its own, with or without notice. But after an appeal has been docketed in the appellate court and while it is pending, such a mistake may be corrected only with the appellate court's leave.
(b) Grounds for Relief from a Final Judgment, Order, or Proceeding. On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons:
    (1) mistake, inadvertence, surprise, or excusable neglect;
    (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);
    (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;
    (4) the judgment is void;
    (5) the judgment has been satisfied, released or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or
    (6) any other reason that justifies relief.
(c) Timing and Effect of the Motion.
    (1) Timing. A motion under Rule 60(b) must be made within a reasonable time--and for reasons (1), (2), and (3) no more than a year after the entry of the judgment or order or the date of the proceeding.
    (2) Effect on Finality. The motion does not affect the judgment's finality or suspend its operation.
(d) Other Powers to Grant Relief. This rule does not limit a court's power to:
    (1) entertain an independent action to relieve a party from a judgment, order, or proceeding;
    (2) grant relief under 28 U.S.C. § 1655 to a defendant who was not personally notified of the action; or
    (3) set aside a judgment for fraud on the court.
(e) Bills and Writs Abolished. The following are abolished: bills of review, bills in the nature of bills of review, and writs of coram nobis, coram vobis, and audita querela.

further detail. ECMC does not indicate the extent to which the motion is bought under Rule 59 as opposed to Rule 60. The motion to alter or amend does not appear to be brought under Rule 60. The arguments will, therefore, be considered under Rule 59.

Rule 59 provides, in relevant part that the court may, on motion, grant a new trial on all or some of the issues after a nonjury trial, for any reason for which a rehearing has heretofore been granted in a suit in equity in federal court. Rule 59 also provides that, after a nonjury trial, the court may open the judgment, take additional testimony, amend findings of fact and conclusions of law or make new ones, and direct the entry of a new judgment.

A motion for a new trial in a nonjury case or a petition for rehearing should be based upon manifest error of law or mistake of fact, and a judgment should not be set aside except for substantial reasons. 11 Wright, Miller & Kane, Federal Practice and Procedure: Civil 2d § 2804 (2nd Ed. 1995)(And cases cited therein.). The motion may not be used to relitigate old matters or to raise arguments or present evidence that could have been presented at trial. Id. at § 2810.1. A principal that strikes very deep is that a new trial will not be granted on grounds not called to the court's attention during the trial unless the error was so fundamental that gross injustice would result. Id. at § 2805.

There are four basic grounds upon which a motion under Rule 59 may be granted: (1) to correct manifest errors of law or fact upon which the judgment is based (2) for the presentation of newly discovered or previously unavailable evidence, (3) to prevent manifest injustice, and (4) to recognize an intervening change in controlling law. Id. at § 2810.1.

Motions to alter or amend are granted only if there has been a mistake of law or fact or new material evidence has been discovered that was unavailable previously. See, e.g., Figgie

International, Incorporated v. Miller, 966 F.2d 1178 (7th Cir.1992). ("If [the plaintiff's] Rule 59(e) motion is evaluated under traditional Rule 59(e) standards, then it may only be granted if there has been a mistake of law or fact or new evidence has been discovered that is material and could not have been discovered previously.") Newly discovered evidence must be of facts existing at the time of trial. The moving party must have been excusably ignorant of the facts despite using due diligence to learn about them. 11 Wright, Miller and Kane at § 2808

*The Principle Amount.* ECMC makes a number of assertions concerning the award of principle, interest and costs. First, ECMC asserts that the Court's fixing of the principle amount of $4,921.67[10] "overlooks that fact that some guarantors were paid more that the amount of their allowed claim." ECMC further asserts that, as a guarantor, "it should not be penalized for that mistake and its full Proof of Claim amount should be allowed as the principle amount."

First, to the extent that ECMC is asserting that other creditors, whether guarantors or not, received more that the amount due to them under their claims, ECMC has failed to provide the Court with any analysis of those overpayments that would permit the court to ascertain how any such overpayment resulted in an improper reduction of the amount owed to ECMC.

Second, the assertion is factually incorrect. The Court did not overlook, or fail to consider, the fact that some guarantors were paid more that the amount of their allowed claim. This dispute concerns claim no. 9. Claim no. 9 was filed in the amount of $4,737.27. The Court allowed the ECMC claim in the principle amount of $4,737.27, the exact amount of its proof of claim (that had been filed by Sallie Mae).

*Interest.* ECMC also asserts that the parties had agreed that the Plaintiff owed the

---

[10] The actual amount of principle awarded was $4,727.37.

interest that had accrued during the pendency of the bankruptcy case. This is true, but as noted in the memorandum of the Court, the *only* evidence regarding the amount of interest that had accrued was Exhibit 5, which listed the total unpaid interest at $184.40. This was the amount that was awarded.

ECMC asserts that "the award of interest by the Court ignores the interest incurred during the Bankruptcy and the capitalized interest since." The Court has reviewed the record . No evidence appears in the record and no statement appears in the transcript of the hearing that would have informed the court that the amount of principle on Exhibit 5 included accrued interest that had been capitalized. As noted, a motion to alter or amend a judgment may not be used to raise arguments or present evidence that could have been presented at trial. ECMC did not raise this issue at trial. It should have done so, especially in light of the Court's request to provide "a detailed account [of] how everything took place from the start to the finish; when they were paid; who paid them; and what" actually occurred. Had it done so, the Court would have allowed the difference between $6,411.11 (see Exhibit 5) and $4,737.27 (principle allowed) as accrued interest in accordance with CFR § 682.410.

ECMC also asserts that no "accounting that could have been produced at the hearing would have accurately reflected the interest since the Court determined the amount of principle to which the interest rate should be applied" and determination " of the interest is simply a mathematical calculation . . ." This assertion misses the point. The Court asked ECMC to provide a detailed account of how everything occurred. The fact that ECMC does not agree with the Court's subsequent determination of the amount of principle owed did not prevent it from explaining and calculating the amount of principal and interest that it believed was due, either

during the hearing or in its post-trial brief.  ECMC could have calculated the amounts due more easily than the Court.  It knew the amount of principal that it believed was due.   It knew the interest rate to be applied.   Further it knew necessary information that the Court could not have known;  it knew when the interest was capitalized, giving it the date on which any non-capitalized interest would begin to accrue.  It was ECMC, and only ECMC,  that could have provided the accounting.   The Court requested such an accounting.  ECMC declined to provide it.  It cannot now assert that the Court should have made the calculations for it.

*Costs.*  ECMC states it its motion to alter or amend that the "determination of the amount the awarding of costs are determined by statute."   At the trial on this matter, ECMC did not provide the statutory basis for its claim of costs nor did it provide the method by which those costs should be calculated.

Even if it had, the Court would not have awarded costs in this case.  In the Supplement to the motion, ECMC cites the statutory basis for the award as 20 U.S.C. 1091(b)(1) which provides that "a borrower who has defaulted on a [government insured student] loan . . . shall be required to pay . . . *reasonable* collection costs . . ."   Also see CFR § 682.410(b)(2) (Emphasis added.).   Reasonable costs are defined as costs "that, in its nature and amount, does not exceed that which would be incurred by a *prudent* person under the circumstances prevailing at the time the decision was made to incur the costs."  CFR § 682.410(a)(5)(iii) (Emphasis added.).

It is concluded that creditor acting prudently would have been paid in full and would not now be incurring the costs that form the basis of the claim for costs asserted by ECMC.

First, claim no. 9 is the claim that is at issue in this dispute.  Claim no. 9 was filed by Sallie Mae.  ECMC was the guarantor on the loan.   The claim was evidently assigned to ECMC

early in the pendency of this case. A prudent guarantor would have filed an assignment of claim no. 9. ECMC did not do so.

Second, a prudent guarantor would have taken steps to ensure that the chapter 13 trustee knew that it was the entity to which the payments on claim no. 9 were to be paid. ECMC took no such steps.

Third, because the plan provided for payment of 100% of its claim, a prudent guarantor would have monitored the payments by the trustee, at least once a year, to ensure that it was being paid an amount each month such that it would have been paid the full amount of its claim by the plan's end. ECMC, which now claims that it has been paid nothing on claim no. 9, did not monitor any of its payments during the pendency of the plan. Had ECMC monitored the payments by the trustee, it would have objected to the final report that indicated that its claim had been paid in full. It did not do so.

Fourth, a prudent creditor would provide the debtor with a simple accounting upon request, especially if the purpose of the request was to pay any amount actually owed. After the Debtor's bankruptcy case was closed, Sallie Mae began dunning the Debtor in the approximate amount of $5,000.00. Counsel for the Debtor requested documentation from Sallie Mae. Sallie Mae did not reply. On December 5, 2006, counsel for the Debtor sent a second request to Sallie Mae requesting it to send to the debtor copies of the original loan agreement and the transactional history of the servicing of the loan from its inception.[11] Sallie Mae's response was both incomplete and confusing. It sent copies of the original loan agreement and two pages each

---

[11]    See Joint Exhibit 4.

of which was entitled "Declining Balance Payment History".[12] The first such page ("Payment History One") indicates that the Debtor owed Sallie Mae $4,854.54 as of October 18, 2000. The last entry on Payment History One indicates that the Debtor owed Sallie Mae $00.00 on May 17, 2001. The second such page ("Payment History Two") indicates that on May 22, 2006, the Debtor owed Sallie Mae $5,855.92. There is no documentation in this response indicating what transactions transpired between October 18, 2000, and May 22, 2006, that caused the debt to increase from $0.00 to $5,855.92. Sallie Mae did not provide the Debtor with any other documentation. A prudent lender would be able to provide an accounting of any debt owed to it in a form that the debtor could understand. Sallie Mae, who owned the claim at the time, did not do so.

Sallie Mae, ECMC, and the other Sallie Mae Affiliates did not act in a prudent matter during the pendency of this case.[13] If they had none of them would have been faced with the decision to incur the costs of prosecuting this action. Even if ECMC had provided the statutory

---

[12] See Joint Exhibit 4.

[13] The shell game seems to continue. After the Court filed its order regarding this motion to alter or amend, the debtor (not through counsel) filed a letter with the Court in which she stated that she had executed a loan secured by equity in her home in order to pay the judgment balance. She mailed the payment to Sallie Mae, the original holder of Claim no.9, who informed her that it no longer held the loan and that it had assigned its rights under the loan to United Student Aid Funds, Inc., the guarantor of the debt giving rise to claim no. 6 in this case. Attached to the Plaintiff's letter was a copy of the letter informing her that such was the case  While the letter has not been admitted into evidence, and while it has not been taken into consideration in the resolution of this matter, it does cause one to pause.

It appears that Sallie Mae did not follow it own statutory requirements. According to the Code of Federal Regulations, any debt that was owed by the Debtor after the Bankruptcy Case was closed should have been repurchased by Sallie Mae.

> If the borrower is a debtor in a chapter 13 bankruptcy case in which a judgment determining that the student loan is non-dischargeable or an discharge order has been entered, the lender shall repurchase from the guaranty agency a loan held by the agency pursuant to a bankruptcy claim paid to that lender, unless the guaranty agency sells the loan to another lender.

34 CFR § 682.402(j). Not only did Sallie Mae not retain the loan, it assigned it to a guarantor other than ECMC.

13

basis for its request for costs at the hearing on this matter, those costs would have been denied.

Finally, ECMC argues that the judgment effectively grants the Plaintiff a partial discharge of the debt owed to without a finding of undue hardship. This statement confuses the concept of the allowance of a claim with the concept of the discharge of that claim. When a petition is filed, a creditor may file a proof of claim. Thereafter, the amount and character (secured, priority, or general unsecured) of the claim is determined and allowed. The trustee or debtor-in-possession then pays the claim in whole or in part through the administration of the estate. Any unpaid amount of the claim is discharged by the discharge order unless the claim is a claim of the kind described in one of the paragraphs in Section 523(a).

In this case, the claims were filed and allowed, and the case was administered. The chapter 13 trustee paid the student loan claims nos. 6, 7, and 9. The recipients applied the payments to claims 6 and 7, leaving claim no. 9 unpaid. The amount owed on account of claim no. 9 is non-dischargeable. The purpose of this adversary proceeding is not to determine the dischargeability of claim no. 9, but rather to determine the amount that is owed on account of that debt. The Court has done this in light of the evidence provided by ECMC. The Court has not held in part of the ECMC claim dischargeable.

As noted in the original memorandum on this mater, ECMC and other student loan guarantors and lenders have been granted favorable status under the bankruptcy code. Their claims are non-dischargeable under almost any factual situation. See 11 U.S.C. § 523(a)(8). Interest continues to accrue on their claims even though that is not the case for other priority claimants. This favorable status, however, does not absolve such entities of their duty to provide evidence supporting a record on which the court may accurately determine the amount of claims

14

during the pendency of the bankruptcy case or the amount of debts thereafter.

*Conclusion*

For the foregoing reasons, the motion of ECMC to alter or amend judgment will be denied.

Upon entry of this memorandum, the Clerk shall forward copies to Stephen E. Dunn, Esq., counsel for the debtor and James C. Joyce, Jr., Esq., counsel for Sallie Mae and ECMC.

Entered on this 10th day of October, 2008.

_____
William E. Anderson
United States Bankruptcy Judge

Appendix #1: Allowed Claims Summary

| 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 |
|---|---|---|---|---|---|---|---|---|---|---|
| # | Claimant | Guarantor | Assigned by Sallie Mae & recorded with the Clerk | Amount of Claim[14] | Amount of Claim per the Ch. 13 trustee. | Payee Per Report of the Ch. 13 Trustee: | Amount Paid | Payee Per Sallie Mae | Amount Paid per Sallie Mae | Refund of overpayment to the trustee. |
| 6 | Sallie Mae | USAF[15] | USAF | $8,126.72 | $ 7,605.72 | USAF[16] | $ 7,605.72 | USAF | $9,883.31 | $1,756.59 |
| 7 | Sallie Mae | NJHEAA[17] | None | $2,680.59 | $ 2,277.59 | U.S.A. Group Guarantee Ser. [18] | $ 2,277.59 | NJHEAA | $3,536.68 | $ 806.09 |
| 9 | Sallie Mae | ECMC[19] | None | $4,737.27 | $ 3,536.68 | NJHEAA[20] | $ 3,536.68 | ECMC | $00.00 | $00.00 |
| | Totals | | | $15,544.58 | $13,419.99 | | $13,419.99 | | $13,419.99 | $2,562.68 |

---

[14]  See Claims Register.

[15]  See Defendants' post-trial brief, p [2].

[16]  Joint Exhibit 6. Trustee's Disbursement Statement for claim no. 6.

[17]  See Defendants' post-trial brief, p [2].

[18]  Joint Exhibit 7. Trustee's Disbursement Statement for claim no. 7.

[19]  See Defendants' post-trial brief, p [2].

[20]  Joint Exhibit 6[sic]. Trustee's Disbursement Statement for claim no. 9.

16